[Cite as *State v. Harlan*, 2011-Ohio-6884.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2011 CA 0013 |
| JESSICA HARLAN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Municipal
                             Court Case No. 10 TRC 8057

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      December 28, 2011

APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

TERRE L. VANDERVOORT                    SHAWN R. DOMINY
Lancaster City Prosecutor               3837 Attucks Drive
STEPHANIE E. HALL                       Powell, Ohio 43065
Assistant City Prosecutor
123 East Chestnut Street
P.O. Box 1008
Lancaster, Ohio  43130

*Delaney, J.*

{¶1}   Defendant-Appellant Jessica Harlan appeals her conviction and sentence for operating a motor vehicle while under the influence of alcohol.

{¶2}   On July 19, 2010, Appellant was charged by complaint filed in the Fairfield County Municipal Court with operating a motor vehicle while under the influence of alcohol, R.C. 4511.19(A)(1)(a), operating a motor vehicle with a prohibited concentration of breath alcohol, R.C. 4511.19(A)(1)(d), and a marked lane violation, R.C. 4511.33.

{¶3}   Appellant filed a motion to suppress the evidence, including the field sobriety tests, which the trial court overruled following hearing. Appellant subsequently entered a no contest plea to the charge of operating a motor vehicle under the influence of alcohol, R.C. 4511.19(A)(1)(a), and the remaining charges were dismissed. The trial court found Appellant guilty and sentenced Appellant according to law. The sentence was stayed pending appeal.

{¶4}   Appellant timely appealed to this Court and asserts one Assignment of Error:

{¶5}   "I.  THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE.  THE HORIZONTAL GAZE NYSTAGMUS TEST WAS NOT ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH TESTING STANDARDS, SO IT IS NOT ADMISSIBLE AT TRIAL AND CANNOT SERVE AS EVIDENCE OF PROBABLE CAUSE.  WITHOUT THE HORIZONTAL GAZE NYSTAGMUS TEST, THERE WAS NOT PROBABLE CAUSE TO BELIEVE THE

DEFENDANT WAS OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL.

{¶6} The following testimony was taken from the trial court's hearing on Appellant's motion to suppress, which was conducted on November 29, 2010.

{¶7} State Trooper Andy Ward testified he was working patrol on July 16, 2010, at approximately 3:00 a.m., travelling eastbound on US Route 33 in Fairfield County. At that time, he observed Appellant drive a Jeep Wrangler off the right edge line as she was traveling in the same direction. He activated his in-car video and then observed her drive almost completely across the right edge line. He activated his lights and stopped the vehicle.

{¶8} Appellant was the sole occupant of the vehicle and the trooper asked for license and registration. The trooper asked Appellant out of the vehicle to check her information and notice Appellant had a crutch. Appellant stated she had sprained her left ankle. Appellant was placed in the patrol car and Trooper Ward testified he could smell "a very strong odor" of alcohol coming from Appellant. He asked Appellant if she had anything to drink that evening. He testified that Appellant said "she'd had a couple shots and she was, um, coming from Screaming Willie's, a bar on Brice Road, and she was going to IHOP, um, to visit a friend that was working here."

{¶9} Because of the strong odor of alcohol, the admitted consumption of alcohol and the driving he observed, Trooper Ward proceeded to ask Appellant to take a field sobriety test know as the horizontal gaze nystagmus (HGN) test.

{¶10}  Trooper Ward stated he was trained on field sobriety testing, including the recent 2006 NHTSA Manual, and that on the day in question he conducted himself in accordance with the training he received. He further described the HGN test as follows:

{¶11}  "TROOPER: "Horizontal gaze nystagmus test is one that we use to determine whether somebody has had a significant amount of alcohol to drink. What we do is ask somebody if they can follow a stimulas. What I use is the tip of my pen, hold it approximately twelve to fifteen inches away from somebody's nose. First thing we do is ask if they have eye problems and then, uh, look for equal tracking to see if they can follow the pen.  If they have any, um before equal tracking, then look for a lack of smooth pursuit, uh, maximum deviation and an onset of nystagmus before a forty-five degree angle."

{¶12}  T. at 26-27.

{¶13}  In regards to smooth pursuit, Trooper Ward testified on direct examination as follows:

{¶14}  "TROOPER: What I do is take the tip of my pen and then move it out for two seconds out to the left eye first, to my right, uh, look for any jerking of that eye, go back to the nose, go out to the left again, look for any jerking of the eye.  And then do the right eye the same way, um go out for two seconds, go back to the nose and then do it once again, repeat the procedure, then go back to the nose."

{¶15}  T. at 32.

{¶16}  He detected the lack of smooth pursuit in both eyes and counted that as two clues.  He next performed the maximum deviation part of the HGN test, and testified he administered the test as follows:

{¶17} "TROOPER: Uh, move the pen out to, start with the left eye again, out to the left and to my right and bury the eye, um, so there's no white in the eye for approximately four seconds.

{¶18} "PROSECUTOR: Okay.

{¶19} "TROOPER: And look for any jerking of the eye while it's at maximum deviation.

{¶20} "PROSECUTOR: And you do the procedure on the right eye then?

{¶21} "TROOPER: Then do the right eye, yes, twice.

{¶22} "PROSECUTOR: Okay. Did you detect distinct nystagmus at maximum deviation in Ms. Harlan's eyes?

{¶23} "TROOPER: For both eyes, yes.

{¶24} "PROSECUTOR: Okay. What was the next part of the test that you administered on Ms. Harlan then?

{¶25} "TROOPER: Onset of nystagmus before a forty-five degree angle.

{¶26} PROSECUTOR: And exactly how do you administer that test, Trooper Ward?

{¶27} "TROOPER: Um, start 12 to 15 inches away from the subject's nose. Move the pen out for approximately four seconds and look for any nystagmus before it reaches a 45 degree angle.

{¶28} "PROSECUTOR: And how do you tell where a 45 degree angle is?

{¶29} "TROOPER: Uh, usually somebody's should width.

{¶30} "PROSECUTOR: Okay. Um, do you check the right eye then after that?

{¶31} "TROOPER: Absolutely.

{¶32} "PROSECUTOR: And do you repeat that test, too?

{¶33} "TROOPER: Yes.

{¶34} "PROSECUTOR: Okay. Um, did you notice onset of nystagmus prior to 45 degrees in defendant's eyes?

{¶35} "TROOPER: I did.

{¶36} "PROSECUTOR: Which eye?

{¶37} "TROOPER: "Both."

{¶38} T. at 33-35

{¶39} The trooper testified Appellant demonstrated six of the possible six clues of intoxication on the HGN tests. The trooper did not perform the walk-and-turn or the one-leg-stand test due to Appellant's ankle injury.

{¶40} Based on the HGN test and his observations, Trooper Ward placed Appellant under arrest for operating a motor vehicle under the influence of alcohol. T. at 58. Appellant later submitted to a breath test at the patrol post, which indicated a .134 breath-alcohol concentration.

{¶41} On cross-examination, Trooper reconfirmed the manner in which he conducted the HGN test:

{¶42} "TROOPER: Um, lack of smooth pursuit, like I said, just go a little bit above eye level, use the tip of my pen, just have them watch the stimulus. Uh, move it out to their left eye for two seconds, then go back to their nose, move it back to the left eye again for two seconds. And then, you have to repeat the procedure for the first time you do it. You have to do it twice in the eye and then do it on the right eye twice doing the same thing.

{¶43} "DEFENSE COUNSEL: So you did two passes for her left eye?

{¶44} "TROOPER: Yes.

{¶45} "DEFENSE COUNSEL: And then two passes for her right eye?

{¶46} "TROOPER: Yes, sir.

{¶47} * * *

{¶48} "DEFENSE COUNSEL: On the maximum deviation part of the test, did you also use that procedure where you check her left eye twice and then her right eye?

{¶49} "TROOPER: Checked her left eye twice and then her right eye. Yes, sir.

{¶50} "DEFENSE COUNSEL: And is the same true of the check for onset prior to 45?

{¶51} "TROOPER: Yes, sir."

{¶52} T. at 67-68.

{¶53} At that point, defense counsel presented the 2006 NHTSA manual to the trooper. Upon reciting verbatim the relevent portion of the NHTSA manual on how to administer the HGN test, Trooper Ward conceded the manual says the tester is to perform each part in the left eye and then the right eye and then repeat the procedure. T. at 70-73.

{¶54} The State attempted to rehabilitate the trooper at which time he stated he performed the HGN testing on the left eye, then the right eye and then repeated the procedure on both eyes.

{¶55} The trial court found the trooper to be credible and dismissed the discrepancy in his testimony as a trivial.

{¶56} The results of field sobriety tests are admissible at trial if the State presents clear and convincing evidence that the officer administered the tests in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") standards. See, R.C. 4511.19(D)(4)(b).

{¶57} The burden of proof in a motion to suppress the results of a field sobriety test in on the State once the defendant has made an issue of the legality of the test. *State v. Ryan*, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803. Part of the State's burden includes demonstrating what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. In *State v. Boczar,* the Ohio Supreme Court held that HGN test results are admissible in Ohio without expert testimony, so long as substantial compliance with testing guidelines has been shown and a proper foundation has been established as to the administering officer's ability to administer the test and the officer's actual technique in administering the test. *State v. Boczar*, 113 Ohio St.3d 148, ¶ 28, 2007-Ohio-1251, 863 N.E2d 155.

{¶58} If field sobriety tests are not administered in substantial compliance with NHTSA standards or no field sobriety tests are administered, the totality of circumstances can support a finding of probable cause to arrest. The standard for determining whether the police have probable cause to arrest an individual for driving under the influence of alcohol is whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence. *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), citations omitted; *State v. Schmitt*, 101 Ohio St.3d 79, ¶ 8, 2004-Ohio-37.

{¶59} The issue presented to us is whether the Trooper conducted the HGN test in substantial compliance with the NHTSA manual, and if not, whether the totality of facts and circumstances can support a finding of probable cause where the HGN test result is excluded for lack of substantial compliance.

{¶60} In this case, Trooper Ward testified he did the test in conformity with his training. Trooper Ward did not testify as to the NHTSA guidelines for HGN testing on direct examination nor was the manual introduced as evidence. On direct and cross-examination, he testified the HGN testing was performed on the left eye twice and then the right eye twice. On redirect, he stated the testing was performed on the left eye, then the right eye and the procedure was repeated in that manner. Due to the confusion in the testimony, we cannot find the State's evidence was "clear and convincing" as to the issue of substantial compliance with the NHTSA manual.

{¶61} While we find the State failed to establish by clear and convincing evidence the HGN test was administered in substantial compliance with the NHTSA standards, and therefore that the results of that test would have been inadmissible, Trooper Ward nevertheless had probable cause to arrest Appellant for OMVI based upon a totality of the other facts and circumstances.

{¶62} Here, Appellant committed a significant, as opposed to de minimus, marked lane violation as shown on the video which were introduced as evidence by State. In addition, when Trooper Ward made contact with Appellant he noticed that a strong odor of alcohol emanated from Appellant. Appellant admitted that she had consumed at least two shots of alcohol at a bar she had frequented that evening and

had just left.    These facts, considered together, are clearly sufficient to establish probable cause to arrest Appellant for driving under the influence of alcohol.

{¶63}  Appellant's assignment of error is sustain, in part, and overruled, in part. The judgment of the trial court is affirmed.


By: Delaney, J.

Hoffman, P.J. and

Farmer, J. concur.


                                                            _____

HON. PATRICIA A. DELANEY


                                                            _____

HON. WILLIAM B. HOFFMAN


                                                            _____

HON. SHEILA G. FARMER

[Cite as *State v. Harlan*, 2011-Ohio-6884.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JESSICA HARLAN | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2011 CA 0013 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Municipal Court is affirmed.  Costs assessed to Appellant.

_____

HON. PATRICIA A. DELANEY


_____

HON. WILLIAM B. HOFFMAN


_____

HON. SHEILA G. FARMER